IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANKURA TRUST COMPANY, LLC, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No.  4:20-cv-01240-O |
| | § | |
| PLAINSCAPITAL BANK, | § | |
| | § | |
| Appellee. | § | |

# ORDER

Before the Court are Appellant's Notice of Appeal (ECF No. 1), filed November 13, 2020; Appellant's Brief (ECF No. 12), filed January 19, 2021; Appellee's Brief (ECF No. 14), filed February 12, 2021; and Appellant's Reply Brief (ECF No. 17), filed March 3, 2021. Having reviewed the briefing, relevant facts and applicable law, the Court finds that the order of the Bankruptcy Court must be **AFFIRMED.**

## I.   JURISDICTION

This appeal arises from the Bankruptcy Court's denial of derivative standing to the Appellants. This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a) because this appeal is from a final order of the Bankruptcy Court denying the Standing Motion, entered on October 28, 2020 (the "Denial Order"). R. 1788-1789. A timely Notice of Appeal of the Denial Order was filed on November 10, 2020. R. 2085-2091. For purposes of this appeal, only one issue is presented. Therefore, the Court limits its discussion of the facts to the facts relevant to Appellants' derivative standing argument.

## II. UNDERLYING FACTS

On June 9, 2020, Lonestar Prospects, Ltd. ("Lonestar" or the "Debtor") and affiliated entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code[1]. *See* ECF No. 13 at 1932, 6024-6039. On June 23, 2020, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee for Region 6 appointed an official committee of unsecured creditors in connection with these Chapter 11 cases ("Appellants"). *Id*. at 1932. In the Bankruptcy Court, after being appointed as Litigation Trustee on behalf of the Debtor's unsecured creditors, Appellants sought derivative standing to pursue certain claims. The Bankruptcy Court denied Appellants' derivative standing on the basis that the Appellants do not have a "colorable" claim for setoff under 11 U.S.C. Section 553(b). Appellants filed a notice of appeal of this denial in this Court.

This appeal revolves around whether PlainsCapital ("Appellee") performed a foreclosure or a setoff as it relates to debt owed to it by Lonestar. PlainsCapital is the lender pursuant to that original loan agreement, dated as of April 14, 2011, with Lonestar as the borrower (the "Loan Agreement"). Pursuant to the Loan Agreement, PlainsCapital agreed to make secured revolving loans to Lonestar according to a specific borrowing base formula tied to accounts receivables and finished sand inventory levels. *Id*. at 546-595, 683-713, 714-760, 768-773.

In connection with the Loan Agreement, PlainsCapital and Lonestar entered into an original security agreement (the "Security Agreement"), which granted PlainsCapital a security interest in all of Lonestar's personal property pursuant to Article 9 of the Texas Business & Commerce Code (the "Texas UCC"). *Id*. at 596-619. PlainsCapital promptly and properly recorded UCC financing statements to perfect such security interests. *Id*. at 780-795.

---

[1] The following facts are taken from the Appellants' brief and the Appellee's brief. The parties do not necessarily dispute the facts but rather dispute the legal implication of the facts. Appellants' Brief, ECF No. 12; Appellee's Brief, ECF No. 14.

On June 3, 2020, PlainsCapital notified Lonestar (the "Default Notice") that Lonestar's financial statements for the fiscal quarter ended December 31, 2019, demonstrated that Lonestar had "breached the Leverage Ratio" under the Loan Agreement, therefore, Lonestar was in default. *Id*. at 510-515. The Default Notice notified Lonestar (i) that PlainsCapital was thereby declaring that an Event of Default under the Loan Agreement had occurred, (ii) that PlainsCapital was accelerating the maturity of the Revolving Note (as defined in the Default Notice), (iii) that PlainsCapital demanded immediate payment in full of the indebtedness owing on the Revolving Note, and (iv) that PlainsCapital was imposing, effective the next business day, the default interest rate (5% per annum in excess of the non-default rate) on the unpaid principal balance of the Revolving Note. *Id*. at 510-515.

The Default Notice further notified Lonestar that simultaneously with sending the Default Notice, PlainsCapital had (i) exercised its rights under the Loan Agreement, Security Agreement, the Revolving Note, the Intercreditor Agreement, the Intercreditor Account Agreement (the "Loan Documents") and Article 9 of the Texas UCC to apply the deposits in the Revolving Priority Account against the accrued, unpaid interest and principal outstanding on the Revolving Note, (ii) exercised its rights to apply the funds under a $601,900 certificate of deposit that had been pledged to it by a third-party guarantor as security for the Loan Agreement, and (iii) that PlainsCapital demanded that any proceeds of the Revolving Priority Collateral in the Operating Account (which PlainsCapital had frozen) be immediately transferred to the Revolving Priority Account. *Id*. at 510-515.

In addition to notifying Lonestar Ltd. of the alleged occurrence of an uncurable Event of Default, the Default Notice notified Lonestar Ltd. of actions the Bank had taken. *Id*. The "Re" clause of the Default Notice stated:

> *Notice of Additional Event of Default, Notice of Acceleration of Maturity and Notice of Imposition of Default Rate, Notice of Setoff, and Notice of Claim to Funds in Operating Account*
>
> The Default Notice also stated:
>
> This Letter is NOTICE OF AN ADDITIONAL EVENT OF DEFAULT, NOTICE OF ACCELERATION OF MATURITY, NOTICE OF IMPOSITION OF DEFAULT RATE, NOTICE OF SETOFF, and NOTICE OF CLAIM TO FUNDS IN OPERATING ACCOUNT.
>
> With respect to setoff, the Default Notice further advised:
>
> This letter also constitutes notice that simultaneous with this letter Lender has exercised its right of setoff under Subsection (d) of Section 2 of the Loan Agreement against the Revolving Priority Account (as defined in the Intercreditor Agreement) (partial account number 2804) and applied those deposits against the accrued, unpaid interest and principal outstanding on the Revolving Note.

*Id*. at 460.

On June 5, 2020, PlainsCapital and Lonestar, through counsel, conferred over the details of Lonestar's leverage ratio breach and access to the funds in the frozen Operating Account. *Id.* After Lonestar identified the funds it needed in advance of the imminent bankruptcy filing, Lonestar consented to the transfer of the remainder to the Revolving Priority Account, where it was thereafter applied against the unpaid interest and principal outstanding on the Revolving Note. *Id*.

### III.   ISSUE ON APPEAL

Did the Bankruptcy Court err in denying the Appellant's derivative standing motion in which it sought to pursue causes of action against the debtor on behalf of the Debtor's unsecured creditors as Litigation Trustee?

### IV.   STANDARD OF REVIEW

The parties disagree on the correct standard of review on appeal. Appellants contend the correct standard of review is de novo, and the appellees claim the standard of review is abuse of

4

discretion. The Court agrees with the Appellants and concludes the proper standard of review on the issue is de novo.

Appellants assert that because the test to determine standing to pursue a claim is deemed colorable if it can survive a Rule 12(b)(b) motion[2], the proper standard of review should be de novo.[3] Appellant Br. 10, ECF No. 12. However, Appellees claim the Bankruptcy Court issued "a ruling on a derivative standing [representing] an 'application of a bankruptcy court's equitable powers' and is therefore reviewed for abuse of discretion." Appellee Br. 14–15, ECF No. 14 (citing *In re Sabine Oil & Gas Corp.*, 562 B.R. 211, 215–16 (S.D.N.Y. 2016)). Neither party provided the court with binding precedent addressing bankruptcy court review, caselaw readily available through adequate research. Upon its own research, the Court has found that a district court reviewing a bankruptcy court's decision functions as the appellate court and applies the same standard of review applied in the federal court of appeals. *Webb v. Reserve Life Ins. Co.*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). The Fifth Circuit has concluded that Bankruptcy "conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008); *See In re San Patricio Cty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). Specifically, the Fifth Circuit categorizes bankruptcy standing as a question of law reviewed de novo. *Matter of Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018).

V.   ANALYSIS

Appellants assert the Bankruptcy Court erred in denying the Committee's standing motion because PlainsCapital had setoff, not foreclosed, its security interest in the debtor's deposit

---

[2] *In re G-I Holdings, Inc.*, 313 B.R. 612, 631 (Bankr. D.N.J. 2004); *In re KDI Holdings, Inc.*, 277 B.R. 493, 508 (Bankr. S.D.N.Y. 1999).
[3] *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020).

account. Appellant Br. 7, ECF No. 12. Appellees disagree, claiming the Bankruptcy Court correctly found PlainsCapital foreclosed on its collateral, and the bank's use of "setoff" in the default notice was a generalized term that did not indicate the bank was exercising a setoff right. Appellee Br. 27, ECF No. 14. For the following reasons, the Court finds the order denying Appellants' derivative standing should be **AFFIRMED**.

   **1. Setoff Claim**

On the merits, the parties disagree as to whether PlainsCapital exercised their right of setoff against Lonestar or foreclosed on its collateral interest. Appellants contend the June 3, 2020, Notice of Default indicated that PlainsCapital had exercised its right of setoff under Section 2(d) of the Loan Agreement, according to PlainsCapital's own statements in the Default Notice. Appellees urge that "setoff" is a generalized term in the notice letter, and PlainsCapital ultimately foreclosed on its collateral interests. While there is little binding precedent on this issue, persuasive caselaw from other circuits leads this Court to agree with the Appellants and the Bankruptcy Court that PlainsCapital exercised its right of foreclosure against Lonestar.

Courts interpret state law to resolve disputes in bankruptcy cases. *In re Luongo*, 259 F.3d 323, 331 (5th Cir. 2001). The Texas Business and Commercial Code indicates that "a security interest in a deposit account does not affect a right of recoupment or setoff of the secured party as to a deposit account maintained with the secured party." Texas Bus. & Comm. Code § 9.340(b). It is uncontested that PlainsCapital is a secured creditor in this case, and under Texas Law, PlainsCapital has both a security interest and setoff rights that can be exercised simultaneously. Appellants do not provide any authority that indicates a secured creditor must expressly elect a remedy. Further, Section 553 of the Bankruptcy Code governs the setoff of mutual debts between a bankrupt debtor and a creditor. 11 U.S.C. Section 553(b) provides:

> (1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, 561, 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
>
> (A) 90 days before the date of the filing of the petition; and
>
> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
>
> (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

The Default Notice demonstrates that PlainsCapital did not engage in a setoff under 553(b). Setoff under Section 553(b) is conditional on mutual debt. 11 U.S.C § 553(b)(2). Here, it is clear that PlainsCapital did not owe any debt to Lonestar. Appellees App. 1291–92, ECF No. 3–4. Because PlainsCapital was not indebted to Lonestar, PlainsCapital's actions cannot be a setoff under Section 553(b).

Additionally, the Appellees identify that the Notice of Default contains specific language to disclaim a remedy election. It states:

> In addition to the remedies above, Lender may proceed at any time to exercise such rights and remedies as it deems necessary, including, without limitation, exercise of remedies under the Security Documents . . . Lender has not made any election of rights or remedies, and Lender hereby reserves all rights and remedies.

Appellees App. 512, ECF No. 3–4. Appellants argue that the Default Notice language classifies PlainsCapital's actions as a setoff; however, they failed to address the lender's statement that no election of remedies was made. Additionally, the Eighth Circuit rejected a trustee's argument that the use of the terms "offset" and "setoff" automatically results in categorization of a bank's setoff instead of a foreclosure. *Smith v. Mark Twain National Bank*, 805 F. 2d 278, 290 (8th Cir. 1986).

The Eight Circuit further reasoned that courts should not rely on the terms used to describe the foreclosure but should instead "focus on the economic reality of the situation; many courts have allowed banks to use a setoff mechanism to foreclose a security interest." *Id.* The Court is persuaded by this approach.

PlainsCapital's actions were correctly classified as a valid foreclosure of its security interest in the collateral. Article 9 of the Texas Business and Commercial Code governs the process that secured creditors need to follow to effectively foreclose on security interests.

Texas law requires both the debtor to default and the secured party to give the debtor notice of default and it is uncontested that Lonestar defaulted and PlainsCapital properly provided notice. After default, a secured creditor may "reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." Tex. Bus. & Comm Code § 9.601(a). Additionally, a secured party "may take any proceeds to which the secured party is entitled." Tex. Bus. & Comm Code § 9.607 (a). Here, PlainsCapital obtained possession of collateral, foreclosing its security interest, and applied the funds seized from the Revolving Priority Account to Lonestar's debt. These actions are consistent with an Article 9 foreclosure. Therefore, this Court agrees with the Bankruptcy Court in construing this transaction as a foreclosure rather than a setoff.

### 2. Standing

The Bankruptcy Court determined Appellants did not have standing because the bank exercising a remedy, other than setoff, could not trigger the application of Section 553(b) of the Bankruptcy Code. For a Court to grant derivative standing, the plaintiff must show there is a colorable claim brought on behalf of the estate that the debtor unjustifiably refused to pursue. *In re Packer*, 816 F.3d 87, 92 (5th Cir. 2016). The Bankruptcy Court correctly concluded the Committee's claim was not colorable because the Appellants failed to meet their burden to prove

a colorable Section 553(b) claim exists under an Article 9 foreclosure. The same has been shown on appeal, and the Court concludes the Appellants do not have standing. Therefore, the decision of the Bankruptcy Court to deny Appellants' derivative standing is **AFFIRMED.**

## VI.     CONCLUSION

For the reasons stated, the Court finds the order denying the Appellant's derivative standing must be **AFFIRMED**. This case must be remanded to the Bankruptcy Court for further proceedings.

**SO ORDERED** on this **17th day** of **June, 2021.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**